Wardlaw, J.
delivered the opinion of the Court.
To justify the instructions which were given, it must be conceded that the jury found that the defendant occupied the parcel of land, west of a certain line, which Turnage had *470 held, and no more; and that that parcel is not within the Ly0ns grant, but is within the grant to the plaintiff, and within the older grant to Wade.
3 McC. 422. 2 Spears 461. ’ '
1N. & MoC. 374. l Mills, 85.
1 N’ & McC. 366
t0 the question of location, no misdirection is complained of; and the finding of the jury conformable to the opinion of the Circuit Judge, appears to be sufficiently sustained by the opinion of Mr. Lowry the surveyor, the inferences which may be drawn from various plats and other papers, the marks which were found, and the long acquiescence in the line that has been established, of all persons whose interest it was to fix it correctly, or to move it further towards the west.
It was not on the Circuit objected that the action should have been by the tenant and not the landlord, and therefore nothing on that head was ruled below. The persons who held the land for the plaintiff were rather agents than tenants, or if tenants they were not lessees of a particular parcel, but tenants employed to hold possession of the whole — tenants of that peculiar species which is mentioned in Davis v. Cluney Johnson, Cannon v. Hatcher, and Alston v. Collins. The possession of such a tenant or agent is the possession of the person under whom he holds, as much as would be an occupation by that person’s overseer and slaves or cropper and hirelings.
The plaintiff had a large grant which covered the land previously granted to Wade, and much more; within the Wade grant the plaintiff had actual occupancy of part, with a claim to the whole within his own grant, but not long enough to give title by possession; he knew of the Wade grant and had possession of the paper but no right to it; Turnage, after the plaintiff’s occupancy commenced, acquired an adverse pedis possessio of three years duration on the Wade grant, quit, and was succeeded by the defendant. Can the plaintiff, shewing no other title or possession, maintain trespass quare clau-sum fregit against the defendant ?
It is not disputed that to sustain trespass quare clausum fregit, the plaintiff must have had at the time of the trespass possession of the place trespassed upon; nor that in such an action the defendant may justify his entry upon a plaintiff in actual possession by shewing title in himself, but not by shewing title in a third person with whom he is unconnected. The dispute is in the application of these acknowledged principles, and in my opinion it proceeds from a diversity of significations given to the terms actual and constructive applied to possession; Ever since the cases of Reid & Eifort, and Williams & McGee, (which firmly established the max-that possession of part, with sufficient evidence of the extent of the claim, is possession of the whole) this diversity may be traced in our reports. It was pointed out by Judge Cheves in the case of Grimke v. Brandon, but often since has been productive of confusion.
3 Hl11’ 265‘
Properly speaking, constructive possession is that possession which the law annexes to the title. This, according to McGraw v. Brockman, will without entry maintain trespass quare clausum fregit, against a casual trespasser — but it is always displaced by any actual possession. It is sometimes called legal possession, or possession in law, to distinguish it from possession in deed or in fact, which actual occupancy gives, as by the common law seisin in law is distinguished from seisin in deed. But the learning as to seisin seems not exactly applicable to possession in this State. Our ordinary modes of conveyance are, for the purpose of maintaining an action against a trespasser or of casting descent upon an heir, here held, even without entry, to confer seisin in deed just as éfíectually as the delivery of turf and twig would do. I know of no advantage in the law which would here accrue to the owner of land from his going upon the land and then departing, so as to leave it unoccupied, or occupied by an adverse claimant.
Actual possession is contradistinguished from the constructive possession above defined. It means an actual and continuous occupancy or exercise of full dominion; and this may be either, first, an occupancy in fact of the whole that is in possession, (which is ordinarily called pedis possessio, and may be called substantial possession;) or second, an occupancy of part thereof in the name of the whole, where there is sufficient evidence of the bounds of the whole that is claimed as one entirety, and the circumstances are such that the law extends the possession of the part that is occupied to those bounds.
This possession of the whole by occupancy of part is often called constructive possession, and the term actual is often confined to a mere pedis possessio. I attempted on the Circuit to remedy the confusion thus produced, by calling the actual possession, which arises from applying occupancy of a part to the whole, a virtual possession, so as to distinguish it from the other kind of actual possession, which is above called substantial or pedis possessio. But whatever terms we may use to give precision to the subject, the attributes which pertain to an actual possession, as above defined, belong to it, whether it be of one kind or of the other. Whatever an occupant has possession of, he has actual possession of. The difficulty in the cases where possession is claimed to extend to more than is visibly occupied, always is to ascertain how far it does extend. Beyond the limits of its extent there is no possession, constructive or actual: — within them all is actual. The extent depends not merely on the evidence of bounds, under which possession with a claim is held, but often on the character of a conflicting claim and the possession which attends it; and sometimes it will be considered more or less, *472 according to the person with whom the occupant is litigating. , Thus, for instances,
2 N. & McC. 138.
1 Hill, 135.
1 McC. 270.
3 Rich. 101. Harp. 69.
Plaintiff lived on a tract; a trespasser cut trees in a distant woodland thereon: possession of part considered to be possession of the whole. Gambling v. Prince.
The owner and adverse claimant both in actual occupancy of different parts of the same tract, each claiming the whole under distinct evidence of the extent of his claim: the title prevails, and the adverse claimant’s possession is confined to his pedis possessio. Stripe and Cox.
An adverse occupant under sufficient evidence of a claim which covers an unoccupied tract and adjoining land too, has actual occupancy of the adjoining land, with a claim to the whole: in a contest with the owner, who has only constructive possession of the unoccupied tract, the adverse occupant’s possession is held not to extend to the unoccupied tract. Turnipseed v. Busby.
But, as I think cases hereafter cited will shew, in trespass quare clausum fregit, brought by the occupant against a third person not connected with the owner, for invasion of possession within the occupant’s claim, and upon the tract unoccupied by the owner, the occupant’s- possession of part within his claim will be considered to extend to his whole claim; — certainly, if his occupancy be within that tract, although not on the locus of the trespass ; as I think, even if his occupancy be outside of that tract.
In the case which is before us, the defendant says that the plaintiff did not claim under the Wade grant, for with that he is unconnected; and that the grant to the plaintiff, although in form it covers the Wade land, does not in fact include it, inasmuch as a junior grant of land previously granted is a nullity; therefore that the plaintiff’s evidence of claim does not extend any possession outside of the Wade grant to a part within it, nor any possession within it beyond the pedis possessio.
This argument is built upon the principles recognized in Steedman v. Hilliard, and in Aiken v. Jones.
Steadman v. Hilliard was an action of trespass to try titles, where the defendant in possession could defend his possession by shewing any title in a third person, against which the plaintiff could not recover: the third person upon whose land the defendant lived could not have brought any action for the occupancy, by which the plaintiff attempted to shew that he had acquired a title under the statute of limitations, for the plaintiff’s occupancy was at a place which was covered by an older grant, to which place, therefore, the third person had no title. In effect, the case decided only that possession outside of an owner’s tract gives no title to land within the tract.
*473 Aiken v. Jones, however, was an action of trespass quare dausum fregit; the plaintiff shewed a grant which covered the place occupied by the defendant, and under it, his own occupancy prior to the defendant’s entry: the defendant shewed a grant older than the plaintiff’s, which covered the defendant’s occupancy, but'not the plaintiff’s: although the defendant was in for only a short time, and shewed no con-nexion between himself and the older grant, it seems to have been held that the plaintiff’s limits were bounded by the older grant, that the possession of his own land could not be converted into possession of another’s, and, therefore, that the plaintiff had shewn no trespass upon his possession. — . From that case the present one is distinguished by this circumstance, that here the plaintiff had possession within the Wade grant, when the defendant entered, and ever since.— This circumstance I deemed so important on the Circuit, that much testimony concerning the plaintiff’s possession, outside of the Wade grant, not mentioned in the report, I held to be insufficient without proof of a possession within that grant.
But I cannot now permit it to be supposed that I express my approbation of what is contained in Aiken v. Jones.— The particular facts of that case are not now to be found either in print or manuscript, but I am persuaded that it was decided under a belief that the defendant had, in fact, the elder title. The plaintiff’s junior grant contained the land which was covered by the older grant; as to that land, it would have been a nullity in opposition to the older grant, urged by the owner, or by any defendant in an action of that kind which admits title, in a third person, to be set up as a good defence : but still this junior grant was evidence of claim, as a conveyance from a person who had no title would have been. It was a question of fact, whether the plaintiff had held according to his junior grant: if he knew of the older grant, and acknowledged its rights, he may have excluded what it covered from his claim, and so have, in effect, altered the limits of his junior grant: but if his claim was conformable to the junior grant, the claim to the part covered by the older grant, was as good as the claim to the whole under a junior grant would have been, if both grants had covered the whole. It could not be endured that an occupant under a junior grant, should have his claim of right, accompanied by occupancy, violated by any one who from the public offices might get evidence of an older grant; any more than that a trespass upon land, actually occupied, should be encouraged by the chance of impunity held out, if some other flaw in the occupant’s title might be shewn on the trial of an action for the trespass. Possession is prima facie evidence of title: a plaintiff in possession, without any *474 title, may maintain trespass against a wrong doer: evi-<jence p,y the defendant, that plaintiff is holding without right or against right, cannot avail the defendant, unless he can sjjew t¡iat j-jg^t is in himself, or in somebody under whom he acted. If title be shewn in a third person, the right .under it must, until the owner or some person under him, claim advantage of it, be presumed to be in the occupant, whether the occupant be defendant in trespass to try titles. or plaintiff in trespass quare clausum fregit.
ie «te. Taunt. 547’- a N.&McC.¿8. See also dis-ionnfnSAiPs*ton v. McDowell, and Watson 1 McMtiUMS. 1 Strob.78.
1N*356 °C’
Cjieves Mss. cólum-bk, vol. 8, p. 7 "
Accordingly we find that, in Grimke v. Brandon, a plaintiff in trespass quare clausum fregit was held (even admitting that his title was defective) to have, by actual occupan-cy> on south side of a river, such possession of another ’part, on the north side, within his claim, as would maintain the action for entry and all subsequent trespasses, against a defendant who had not shewn title.
In Williams v. McAlilly there were an old grant and two grants, all of the same land, — possession by each of the junior grantees, of different parts, claiming the whole, for the statutory period.: it was held that the junior grantee who first entered, had such actuabpossession, as at the expiration of ten years, gave him a title to all the land within his claim, except the part in the actual occupancy of the other junior grantee. On the Circuit it had been held that the minority of the first occupant, under a junior grant, would prevent the second occupant from acquiring title ; or that the first might recover from the second, even the part of which the second had ten years pedis possessio ; but this was overruled.
In Owens and Brown v. Goode, (in note to this case,) there *475 were an old grant with which another party was connected; a plat which covered part of the old grant and other land— occupancy by the defendant, under that plat, of the part outside of the old grant: a junior grant to the plaintiff, of all the land within the old grant; occupancy by him, for the statutory period, on a part of it outside of the defendant’s plat, after abandonment by an agent of plaintiff’s, of a possession which had been, for a few years, held on the part within defendant’s plat: entry by defendant, upon the part within his plat, covered by the old grant; action of trespass to try titles, brought against him. It was held that as there was no pedis possessio of the part which was covered by *476 both claims, and by the old grant, but there was pedis possess{0 ori either side outside of that parcel, the defendant’s possession, being first, extended to his whole claim, where it wag not interrupted by an actual occupancy; attached again, soon as the actual occupancy, within his claim, was abandoned, and prevented the extension of plaintiff’s subsequent possession to the same part, which was thus already occupied by the prior virtual possession of defendant; and that, upon this virtual possession, the defendant might have maintained trespass quare clausum fregit, against the person who had entered upon his claim and abandoned possession, at any time before that person had held ten years.
*477 It seems to me, then, to be plain, that in a case like this, it does not affect the extent of the plaintiff’s possession, the defendant to shew the existence of an older grant with which neither party is connected.
It is thought to be impolitic that a squatter who has a junior grant, which covers an old grant and some other parcel, should, by settling on the other parcel, prevent an honest owner, who cannot prove a perfect title, from entering upon the old grant. But it may be answered that no one who cannot prove a title can be known to be owner, and nobody in possession must be presumed to be a squatter. No length *478 of possession, outside of a tract, will give title against the (owner of the tract — but accompanied by evidence of claim ’ to the tract, possession outside may be sufficient to maintain trespass against every one who has not the right which title gives. The condition of the supposed owner would be just the same, if the squatter had settled upon his unoccupied land, and driven him to an action to try titles. Owners, under doubtful titles, will take care to preserve possession. On the other hand, an honest owner may be living on his land, held under various titles, but occupied as an entirety, and if his possession of part is, by reason of an old grant which seems to shew title in a third person to some woodland par *479 cel of his tract, to be prevented from extending to the whole, some squatter might settle upon the parcel covered by the old grant, and defy the owner, who has title, but cannot prove it, to eject him in an action to try titles.
6M-eTiMfet' ’ggg
The defendant further objects that, although the plaintiff may have been in possession when Turnage entered, Tur-nage disseized him of the locus in quo, departed after several years, and was succeeded by the defendant, before any reentry of the plaintiff, who has not since re-entered: so that, although the plaintiff might have maintained this action against Turnage, he cannot maintain it against the defendant.
2 Hill, 464. 2 Strob. 97. Dud. 340.
A constructive possession, as I have said, is displaced by any actual adverse possession, substantial or virtual: because the implication of law, that he who has shewn title, is in under that title, yields to proof that another person is holding adversely. Against an adverse occupant who was in possession when the plaintiff acquired title, the plaintiff cannot, then, maintain trespass quare clausum fregit, even although the plaintiff, when he brought his action, may have had possession of the other part of the land covered by his title : Pearson and Dansby v. Nelson, Wilson v. Douglass, Amick v. Frazier; and as it seems to me, against such adverse occupant, not a casual trespasser, who entered after the plain *481 tiff acquired title, but when the plaintiff had no actual possession of any part within his title, although he may have, entered and departed before or afterwards, the plaintiff cannot maintain trespass quare clausum fregit, even for such occupant’s original entry.
But all this falls short of the case we are considering. — ■ The plaintiff here had actual possession when Turnage entered. If he had been entirely dispossessed by Turnage, he might have maintained this form of action against Turnage for the act of dispossession, if not for subsequent trespasses: but he could not have maintained the action against the defendant. But he was not dispossessed by Turnage; by his continued *482 possession of other part of the tract, he still had a virtual possession even of the locus in quo. I say nothing of the re- ' entry upon the locus in quo, said to have been made by the plaintiff, after the defendant took possession; for I cannot perceive any effect that the law, as administered here, gives to either an entry or re-entry, which is not accompanied by occupancy. Yirtual possession, however, is equivalent to the re-entry of a disseisee ; if it does not co-exist with an adverse pedis possessio, (as the recovery of damages for trespasses subsequent to the trespasser’s acquishion of possession, seems to shew that it does,) it is ever ready to supplant it: it is a sort of continual claim, or constant re-entry, and soon as the *483 adverse occupant departs takes his place. All of Turnage’s acts were continued invasions of an existing possession, and so were successive trespasses: the defendant, by following him, succeeded to no right, but became a trespasser upon a possession which, if it had not previously been concurrent with Turnage’s, extended to the locus in quo the instant that Turnage’s foot was raised.
The motion is dismissed.
Richardson, J. — O’Neall, J. — Evans, J. — and Frost, J. — concurred.

Motion refused.

. A. Owens & J. G. Brown v. Mack Goode.
The land in dispute was part of an old grant with which neither plaintiff nor defendant was connected; each had actual possession, under his claim, outside of the disputed parcel, which, under color of title, was claimed by each; both had held possession in opposition to the original grantee for more than ten years, and plaintiff for some three years longer than defendant; but before the statutory right of plaintiff was matured, defendant took actual possession of the disputed tract; held that plaintiff, not having had exclusive possession for the full period of ten years, could not recover against defendant; but that if plaintiff’s title had been perfected to the whole of his claim before defendant’s possession commenced, then his title being good against the original grantee, to the whole, defendant’s entry would have been an infraction of his right.
Before Evans, J. at Barnwell, S. T. 1845.
This was an action of trespass ‘to try title. The land in controversy was granted to one Cobia, in 1774. In 1819, in surveying the lands of one Loper, a part of the Cobia grant was included in *475 the survey as belonging to the estate of Loper, whose daughter, Goode, the ancestor of the defendant, married. It did not appear how Loper derived his title, nor did he have any possession within the lines of the Cobia grant, but that which he claimed was clearly marked out by lines actually run and marked. In 1825, John A. Owens took out a grant for 270 acres, which included nearly all the land within the Cobia grant, and including what was claimed by Goode as lying within the lines of the survey made of the land of the estate of Loper. The plaintiffs claimed under the will of John A. Owens. About 18 years before the trial, Owens leased the land, for 10 years, to one Knight; Knight settled within the lines claimed by Goode, and one Deason, under Knight’s lease, settled on another part of the land, but not within Goode's claim. Knight resided on the land 3 years, and on the threat of Goode to sue him, removed from the land, abandoning his possession within Goode’s claim. Deason still remained in possession, and continued up to the survey on the part he settled on. Goode began to clear and cultivate what he claimed about 3 years after the settlement made by Deason. Both had actual possession within the lines of their respective claims, more than 10 years, but the plaintiff’s possession by Deason was the oldest by about 3 years. The Circuit Judge was of opinion that the possession which is to give title, must be exclusive, for the full period of ten years. Of the part claimed by Goode, the plaintiff had only a constructive possession, under color of title, but Goode, within his claim, had also a similar possession, under color of title. The plaintiff had not therefore an exclusive possession, without which there can he no' title under the statute of limitation. If Owens’ title had been perfected to the whole within his grant before Goode’s possession commenced, then his title was complete, as against Cobia, the grantee, to the whole; and Goode’s taking possession would have been an infraction of his right. Under the circumstances of the case, it was held, that the plaintiff had established no title to the land claimed by the defendant, and the plaintiff submitted to a non-suit, with leave to move to set it aside.
The plaintiffs moved to set aside the non-suit, on the grounds,
1. Because the plaintiffs did make out a sufficient title to the land in dispute; and therefore the said non-suit was erroneously ordered.
*476 2. Because the plaintiffs showed good and sufficient title to a portion of the land covered by their grant, and not covered by the Co-bia grant — under which alone Goode was protected, and Goode having trespassed on that portion, the plaintiffs ought to have had a verdict.
3. Because the verdict was contrary to law.
Cheves R. 200.
Owens Sf McCarthy, plaintiff’s attorneys.
Evans J. delivered the opinion of the Court.
It is supposed that the circuit decision in this case is in conflict with the ease of Williams v. McAlilly, but that is not the fact, ln flat case both Lacy’s and McAlilly’s grants covered the same land. Both parties, by their constructive possession, had acquired a title against Lowndes, the first grantee, for the whole of the land. Both were invested with Lowndes’s title, and in such case there was no other way of settling the controversy, but by awarding the lands to him who had the oldest title; that is, to him whose title was first perfected. In this case, Goode’s claim did not at all interfere with the actual possession of Owens. It included only a small part of the Cobia grant. Each had acquired a title against Cobia for all within the boundaries to which he claimed. There could not be two constructive possessions to give title, any more than there could be two actual possessions; and if two men be in the actual occupancy of the same house or field, I do not see how one can acquire a title against the other by possession. But if each is in occupancy of distinct houses and fields, each will acquire a title to the extent of his possession. But there is a feature in this case which removes all the difficulty. 'When Owens’ tenant intruded on that part of the Cobia grant which Goode claimed, Goode threatened to sue him unless he abandoned his possession. This was done, and must be regarded as Owens’ act, for all the title ho had was derived from the possession under his lease to this tenant. How can it be said that, after this, Owens had any constructive possession of the land, claimed by Goode, when on Goode’s asserting his title, the actual possession was given up 1 If this tenant of Owens had refused to give up the possession, it is very clear Goode could have maintained trespass quare clausum fregit against him. Goode was living within the lines of the survey made of Lo-per’s land, in 1819. The Loper land was his in right of his wife; he had, therefore, a constructive possession of all within that survey; *477 upon such constructive possession he could have maintained an action against any casual trespasser. No one but Cobia could question his title. In Gambly v. Prince, the plaintiff resided on the tract of land, but the trespass was on an unenclosed and uncultivated part, at some distance from his house. The only evidence offered, was, that the trespass was within the lines of the plaintiff’s land, or the survey on which he lived. There was no written evidence of title. The action was maintained on the constructive possession alone. If this be so, how could Owens have any such constructive possession of what Goode claimed, as could ripen with a title under the statute of limitations ? I think, therefore, the circuit decision was right, and the motion is dismissed.
2 N. & McC. . 198-
Richardson, J. — Wardlaw, J. — and Frost, J. — concurred.
O’Neall, J. — I dissent, and refer to my report in the ease of Williams v. McAlilly. Cheves, 200.
*The following is the report of his Honor Judge O’Neall, who presided at the trial, on circuit, of the following cases, viz:
Daniel O. Williams & Wife v. James McAlilly.
The same v. Hiram Shannon.
The same v. Joseph Fullerton.
The same v. Robert Fullerton.
Tried at Chester, Fall Term, 1839.
These four cases were actions of trespass to try title to a tract of land containing nine hundred and forty acres.
The plaintiff, Mrs. Williams, was the only surviving child of Samuel Lacey, who died in Mississippi, in August, 1814. She and her mother, who are residents of Mississippi, are entitled to his real estate in equal moieties. They claimed under a grant to Samuel Lacey, covering the locus in quo. It was surveyed for him on the 21st of April, 1800; his plat was lodged in the Surveyor General’s Office on the 17th of October, 1800, and the grant issued on the 3d of November, 1800.
Colonel Thomas Davis, the agent of Samuel Lacey, rented, in the fall of 1813, the land to one of the defendants, Joseph Fullerton, upon the terms that he was to stay on the land as long as he pleased, paying 25 cents p&r annum rent. He accordingly entered upon *478 the land, and was known as the tenant of Lacey to all the neighborhood, and to the principal defendant, James McAlilly, under whom all the others held. On the 3d of August, 1818, Fullerton took out a grant in his own name, for a part of the land, covering the spot in his possession. On the 6th of April, 1824, he became the tenant of James McAlilly. The defendant, Joseph Fullerton, was examined as.a witness by James McAlilly; he said he never would have disputed Lacey’s title, that he always admitted that he was a tenant under it, and would have given up to Lacey’s heirs at any time; he would, he said, have held the lands against McAlilly, if he could. The plaintiff, Mrs. Williams, was born in 1813.
It appeared that the land in dispute was covered by a baronial grant to Edward Lowndes, in ’75, but the defendant, James McAlilly, did not enter under, nor hold by that grant. He entered into possession of the land in 1817, under a grant to his father, Wm. Mc-Alilly, bearing date the 3d of November, 1800. Richard McAlilly, a tenant of Wm. McAlilly, was in possession of the land before 1806. He was sued by Lacey, and a recovery had by default, in 1806 ; the judgment was signed 2d May, 1806. Wm. McAlilly knew of this suit, for he told one of the witnesses he had employed McNeill to defend the suit, and he had lost it. When the sheriff went to dispossess McAlilly, and to put Davis, Lacey’s agent, in possession, he found the possession had been abandoned. James McAlilly has had the occupation of a part of the land since 1817.
It further appeared, that Lacey agreed to give one Ross fifty acres of the land, to take possession and hold for him, and gave him a bond for titles for the same, describing it in such a way that it was marked out on the re-survey plat. Ross took possession within the limits described by his bond, about its date, February, 1803, and continued 13 years in the actual occupation; he then removed, transferring his bond, by delivery, to Morrison, by whom it was left with Major Kennedy.
The jury found for the plaintiffs, in all the cases, for the land, except that part covered by the bond of Lacey to Ross.
The defendants appealed; and excepted to the following points in his Honor’s charge, viz:
That Fullerton’s tenancy under Lacey’s title continued “ until he attorned to McAlilly, in 1824; and even his possession since, as McAlilly’s tenant, might not enable him or his landlord to hold against Lacey’s title, though the heirs had been under no disability; *479 but it was necessary to look at that, as Mrs. Williams’ nonage prevented. the statute of limitations from cutting off any right she had.
I thought that Fullerton’s possession, commencing under Lacey, enured to the benefit of the heirs of Lacey, and that it was to be regarded as one entire possession; for the possession of the Heir and the ancestor is the same, there being no fresh disseisin and no new entry. I did not think that Fullerton’s new grant ended his tenancy ; he still remained in possession, and gave no notiee to his landlord of his intention to hold for himself.”
That “ although the grants of Lacey and McAlilly were issued the same day, yet Lacey’s survey being the eldest, made his grant the elder and better legal title.”
That even McAlily’s claim to the part actually occupied by pedis possessio u cannot have effect, for Mrs. Williams was an infant of only four years of age, when the possession commenced, and had not attained maturity more than three years, when these actions were commenced.”
This ease is fully reported in Cheves, 200.
A. Cleveland v. J. Jones.
The plaintiff having been insane at the time he was disseised of his land by the defendant and those under whom he claimed, his right of action was saved by the Statute of Limitations, during his insanity, and for one year after; and whether the action was brought in this time is a question for the jury.
Possession does not always mean an actual possession, or pedis possessio. The owner of an entire tract, and occupying a part of it, is in the possession of the whole — so, also, is the grantee of wild and uncultivated lands; these last are usually called constructive possessions, for the invasion of which trespass guare clausum fregit will lie.
The action of trespass guare clmstm fregit is founded on the plaintiff's possession, and will always lie when there has been a disseisin.
It by no means follows, that because trespass guare clausum fregit may be brought, the plaintiff may not also bring trespass to try title, when the defendant is in the actual occupancy of the land.
If a party in the constructive possession of land is disseised by the entry of another, and the disseisor afterwards abandon the possession, the constructive possession of the disseisee will immediately re-commence, and he may bring *480 trespass quare clausum fregit against any person who enters under the first disseisor.
Before Butler, J. at Pickens, Fall Term, 1837.
Trespass quare clauswn fregit. Pleas, general issue and the statute of limitations.
The plaintiff’s right to recover depends on the following statement of facts.
Col. Benjamin Cleveland died in 1806, leaving a will, by which he devised to his son, the plaintiff, his valuable real estate on the Tugolo river, in South Carolina and Georgia. At the time of his death, the Colonel lived on the Carolina side of the river, at a place called the Homestead, and his son lived in Georgia. The Homestead tract of land had been granted to different persons, in separate parcels; but at Col. Cleveland’s death it formed one entire tract of land from the Colonel’s residence up the river. The part in dispute is the upper part of the same tract.
This part has been cultivated by Col. Cleveland’s tenants, one of whom, at the time of his death, was in possession of it. After-wards, the present plaintiff put tenants on the land, who held it for him till 1809 or 1810, About this time the plaintiff moved to the Homestead, and became deranged and .incapable of managing his business. He had, at this time, 30 or 40 negroes, and his land was worth $10 000 or $12 000. His son and sons-in-law took possession of his property, and, by proceedings in Georgia, one of his sons-in-law, Haerne, was appointed his committee. By some arrangement among the children, they divided the estate among themselves. The part now in dispute has been conveyed from one to another until Wily bought it, and who, by deed, sold it to the present defendant for valuable consideration. The deed is dated 10th August, 1829 ; since which time the defendant has been in possession and cultivation of the land.
About two, three or four years ago the plaintiff recovered his mind, and found himself living in squalid poverty, and his property taken from him. For the last thirteen or fourteen years, he has been living at the Homestead, in a miserable cabin without furniture ; two old servants, one the body servant of his father in the revolution, have been living with him. When he recovered Mb mind he became dissatisfied with the arrangement of his children, *481 and would not let them come about Mm. He found Jones in possession of the land now in dispute, and demanded possession, which was refused. He gave instruction to counsel to bring suit, and this action was brought in August or September, 1836.
The Circuit Judge says he did not think that he had ever been legally dispossessed of the land or any part of it.
Whether he could be affected by the statute of limitations depended, in some measure, on the time which had elapsed from the period he became compos mentis till the commencement of this suit. If he recovered his mind, as one of the witnesses said, two years ago, then he brought the action within a year after his insanity ceased, and could not be effected by the statutory bar, being protected by a saving provision in the statute in favor of lunaticks, who are allowed one year after they recover their minds to bring their action.
But if the plaintiff became compos three or four years ago, as one of the witnesses said, then more than a year had elapsed before he brought his action, and the extent of his recovery, and, perhaps, his right to recover, may be affected.
.His Honor was disposed to take the most favorable view, and to think that the action was brought within the time allowed by the statute; and the jury also took this view, and found for the plaintiff three hundred dollars, the amount of rents and profits that have accrued since the defendant went into possession.
But taking the other view of the subject, the question arises, which is made by defendant’s counsel — that is, that plaintiff’s entire right to maintain this form of action is barred by the statute. He contends that the original entry is the trespass, for which alone this action could be brought, a right of action having then accrued. His Honor thought otherwise. He thought the action could well have been maintained, by shewing that defendant was wrongfully in possession of the land, one year or two or three years, immediately preceding the commencement of this suit — and that plaintiff could recover for all damages for four years at least before the commencement of the suit. Any unlawful use of another’s land against his consent is a trespass. If so, the plaintiff was not bound to be limited to the original entry to maintain his action.
The defendant moved the Court of Appeals for a new trial, up..on the following grounds.
*482 1st. Because his Honor, who presided, instructed the jury that the plaintiff was entitled to maintain the action of trespass quare claUsum fregit against the defendant, notwithstanding he had been dispossessed of the locus in qm of the trespass complained of for several years before the entry of defendant, who claimed by purchase from a third person.
2d. Because his Honor held, that the statute of limitations was no bar to the plaintiff’s action, although the defendant had entered and been in possession of the close upon which the trespass had been committed, for more than four years next before the commencement of the suit.
Whitner & Young, for the motion.
Evahs, J. delivered the opinion of the Court.
I think there is nothing in the second ground. The plaintiff was insane at the time he was disseized by the defendant, and those under whom he claims. His right of action is saved by the statute of limitations, during his insanity and for one year after, and the verdict establishes that the action was brought within that time.
The first ground presents a question of much difficulty, but I have come to the conclusion that the verdict may be reconciled entirely with the rules of law. The form of action adopted in this case, is trespass quare clausum fregit. This action is founded on the plaintiff’s possession, and will always lie where there has been a disseizin. But possession does not always mean an actual seizin or pedis possessio. The owner of an entire tract, and occupying a part of it, is in the possession of the whole; — so also, is the grantee of wild and unoccupied lands. The last mentioned are usually called constructive possessions, and our books are full of cases where trespass quare clausum fregit has been brought for an invasion of such possessions. But it by no means follows, that because this form of action may be brought, that the plaintiff may not also bring trespass to try title, where the defendant is in the actual occupancy of the land. Indeed, in such cases it is the better action, because the writ of possession issues of course on a verdict for the plaintiff, and I am inclined to think it would have been a more appropriate action in this ease It must be remembered that the plaintiff, by his tenants, had the part in dispute in actual possession at the time he became insane, and that he continued to live on the *483 same tract or body of land, up to the time when this action was brought. His constructive possession extended over every part of it, and there is no doubt that trespass quare clausum fregit, would have lain against any one who entered and disseized him.
That was expressly decided in Grimke v. Brandon. The only difference between that ease and this, is that Brandon was the first trespasser, hut J ones came in under a title derived from him who first disseized the plaintiff; and this circumstance, it has been argued, takes away from the plaintiff the right to bring an action founded on his possession, and drives him to his action of trespass to try title. Let us enquire if there be any thing in this objection. The proposition is, that the plaintiff is disseized by the first entry, and was, therefore, out of possession when Jones came in. I am inclined to think the proposition is true, that where the first disseizor dies in possestion, and his heir is in by descent without any new entry, on the death of the ancestor in possession, the heir is in eo instantly and there is no interruption of the possession; it is continuous, and no time intervened for the re-commencement of the plaintiff’s constructive possession. But this is not the fact where several persons enter in succession; one must go out before the other can come in. Suppose A, the first disseizor, having sold to B, abandoned the possession, and a year intervened before B entered on the land, could not Cleveland have sued B in trespass quare clausum fregit ? And why? Because, when A left the land, Cleveland’s constructive possession, which was suspended whilst A was in, immediately re-commenced, and the entry of B was as much an invasion of that possession as the first disseizen of A. If this be true where the interval is a year, why not where it is a month or a day? It can make no difference that A sold to B. Having no title himself, he could convey none. The evidence in this case is, that the several persons who occupied the land during Cleveland’s insanity, came into possession successively. It does not appear what period of time intervened between the removal of one and the entry of the other. But there must have been some interval, and that was sufficient to restore the plaintiff’s possession.
1N. & M’C. 356.
The motion is dismissed.
■Gantt, J. — Richardson, J. — Earle, J. — and Butler, J. concurred.

Motion refused.